Please be seated. I think that was 10 minutes. That's just the closest I've ever come to obeying my promise. Next case that we have for oral argument is Hudson v. The Boppy Company, docket 24-1322. Counsel, when you're ready, please proceed. Good morning. May it please the court. My name is Paul Doolittle. I'm from Charleston, South Carolina, and I'm here today on behalf of Ms. Hudson and the putative class of 3 million purchasers of the Boppy Baby Lounger. I would like to reserve three minutes for rebuttal, please. As this court is probably aware, this is a case that stems from a dismissal in totality from the lower court at the District Court of Colorado. The judge in that decision dismissed every claim that was pled, and I think it's important to start with looking at what the decision of that judge stated in that opinion. The lower court said this case is about whether the plaintiffs were misled and whether they would have never bought the product had they been aware of the safety issue, the product being the baby lounger that we're discussing. The court went on to say that all four claims, the unjust enrichment express warranty, warranty merchantability, and the warranty of fitness for a particular purpose, the claims that were dismissed, that all four claims hinge on whether Boppy made misleading statements about the safety of its loungers. The court went on to highlight what it termed to be the only four statements in the record that it could see that were related to safety. In fact, most of these statements come from what's known as the Boppy Pledge. It's a pledge that Boppy honors, follows, and puts forth as its way that it does business. And these statements are as follows. Boppy is committed to the safety of infants. Boppy is committed to everything possible to help make babies safer. The baby lounger is a safe place to put newborns down. And the fourth, that the recessed interior or place where the infants fit perfectly. Those are the four statements. Is that what the district court referred to as puffery? Correct, Your Honor. He said all four of those, the lower court said all four of those statements are complete puffery. And what about that? Do you have any law to the contrary? Your Honor, I think that whether or not those statements are puffery or statements of fact or statements of opinion is a matter for the jury to decide. It's not a matter for the court to take in a blanket issue statement and say, I've looked at these and no reasonable person, no reasonable juror could ever interpret a statement that says we're committed to the safety of infants to apply to a baby lounger where infants die when you're placed in those loungers. So I think what the lower court has done is it substituted its opinion about what those statements were and inserted those into puffery. And we all know from law school, puffery involves when you tell somebody, the classic example was that, you know, this vehicle, I'm selling a used car. I was driven by my grandmother to the grocery store once a week into church on Sunday. And she never pressed the gas pedal press, you know, pass a little bit of an inch and she never went on the highway in that car. I mean, that's puffery. Counselor, can I ask you about Ms. Hudson's standing in this case? What injury did she suffer? She suffered an economic injury by the purchase of a worthless product. Okay. Well, so I read your brief and argument to rely upon the benefit of the bargain theory. Has this court of Supreme court ever endorsed that theory? This court? No. Other courts, yes. So I, for example, you, the McGee opinion, you cite from the ninth circuit. Correct, Your Honor. So there, there are several other courts that have accepted that, but I don't, I do not think this court, I think it's a novel court of novel impression, case of novel impression for this court as to whether or not those statements do give standing. All right. Let's say I agree with you in theory that the benefit of the bargain theory of standing is a way to plead economic harm. Did you actually plead it here? Yes, Your Honor. I believe in taking a totality. When you look at the amended complaint that was filed here, I believe in the liberal pleading rules, when you're looking at pleading as to the rules that have interpretation of that pleading, I do believe that within that it is well pled. And now is it well pled? Possibly not judge. It's not explicit, but you're saying if I look at the complaint as a whole, I can sort of call out of that. In the totality of the complaint, which is I think what we're supposed to be doing when we look at first initial drafts of pleadings. If we spot you, I have also a question about standing. If we spot you that you have pled injury, you also need to plead traceability for your client, right? Correct. How have you done that here? The traceability for the client that she purchased the being there, there's no doubt she purchased of the boppy lounger in question. There's no doubt that she used the lounger in question. It's, it's alleged in the amended complaint that she did purchase it and how long she used it. She still had it when she's when the refund option came available. She tried to make herself take advantage of the refund. Doesn't she, she has to plead more than just to conclude a restatement that she relied, right? I mean, what I'm trying to find and maybe you could point me in your complaint cause I don't want to miss it, is factual allegations to support the traceability element of standing for your client. And I think that's where we, we in the complaint itself, judge, I mean, as a totality, when you look at the complaint itself, I think it's, this is within there. And I think what happens in this case and what we have a reversal, I mean, why we're seeking reversal is the decision was issued too early. This is before even my client was even deposed. It was before any class member was deposed at all to ask those very questions about what did you do? Did you purchase it? How long ago did you purchase it? What's your receipts? But we do know from the record that she is a refund class member. So we do know that she did purchase the product and we do know that she was offered the $9 refund as opposed to the $30 purchase price. How should we be thinking about the fact that, um, that the district court resolved this on 12 B six. Um, but there were arguments about standing made before the district court, uh, that you did not respond to. And so I want to know how I should be thinking about, um, the standing litigation in the district court for purposes of resolving that issue on appeal. Correct. Judge, as I interpreted the district court's opinion and the reading, and that this is based on the totality of circumstances with the judge's request for amendments, um, and the allowing the amendments and the meeting confers that occurred. And of course, reading the briefing that was done before the amendments were done. And when you read that in totality, what I see is the 12 B six. I mean, I don't see the standing issue raised by the court. I don't see the standing issue. I understand it's noted. I understand it's been briefed because lawyers are cautious and we want to make sure we address everything, but I don't believe in my reading of the opinion again. And again, I read it again this morning because I thought this issue was probably relevant, um, and would be mentioned, but I read it as a complete, just 12 B six standard dismissal. I don't read standing as being paramount in the court's decision. I mean, is it mentioned occasionally? Yes. But I mean, a standing opinion when you don't have standing, that's typically what the court starts with, right? Number one, no standing, boom, done. We don't get to what statements are at issue. We don't get to calling the record and finding which statements mentioned safety. Yeah, I, I agree with you. I think that it would be strange to think the district court thought you lacked standing and then proceeded to issue an entirely advisory ruling. Right? So, but the court does say that the benefit of the bargain theory, you have to do more. So do you think the court may have understood that more as characterizing elements of the claim and less about standing? That's my reading judge. I mean, I, your honor, I, that's, that's how I interpret what the, what the lower court was doing. I mean, we did not have the benefit of oral argument in that case. Um, so we have no, I have no back and forth with the court to, to relate to you about what the questions were. So, but even if the district court didn't address it, um, robustly or it wasn't, uh, litigated precisely, we still have an obligation to consider it, right? As an obligation, I'm not sure you have, you're obligated to, I certainly, you certainly are able to consider it and do with it what you will. I don't know. I don't think I would consider you obligated to address it in your opinion. I think you could simply remand this case back to have a decision on the 12B6 issue, um, and leave the 12B1 issue open for the court to then bring it back up again and make a further record so that this court would have an understanding of what that record is. So if we're going to make a decision on standing, that we actually have a lower court that hears arguments on standing, that we brief standing as opposed to have a mention in an opinion from the lower court. This somewhat refers to standing, but in conjunction with the 12B6. So I think the lower court opinion is, it's confusing. You think, you think that there's facts that are relevant to the standing determination? I do judge. I don't, you know, I think that there are other facts that would be relevant to the standing determination. If you ask me what those are right now, I can't, I'm blank on one, um, to anticipate your second question. But I do think that there will be factual developments that would be necessary to relay and to put in the record so that when this court does make a decision on standing, which is a hugely important issue, as you all are aware, I think it would be incumbent upon us to make sure that the record is replete with all of the evidence and all the facts and everything that we could possibly do to, you know, then issue precedent on standing.  such a, you know, in a monumental issue is standing and we all know standing has become one of the, you know, the favorite, uh,  appellate issues, uh, of the day. Um, it's certainly one of the ones that we in class action work counter on a frequent and regular basis. But again, I, you know, when we were talking with the court, when we are, when we were doing the briefing below, when we are reading the court's opinions, uh, in there, the court's leading seat to a grouse amendment, we're not thinking the court was grappling with standing. And so a moment ago, you said that Ms. Hudson bought a worthless product, but how can I glean that from the record? When my understanding is she purchased the boppy pillow, enjoyed the use of it for five months without incident. And then essentially tucked it away for a couple of years until there was a recall. And then she got a refund. So how was that a worthless product for her worthless product? So judge, she's not allowed to use it anymore. So while I might've had use of it, it's just like purchasing a car. If I buy a car today and I drive it for three months and then I park it in my garage for feeling of, I'm going to, I'm taking the bus now where I'm riding a bike to get exercise, whatever reason, because I'm not using the product doesn't mean I didn't pay for it. It doesn't mean it's not my money that you used to pay for it. And I'm storing that product. Could have had subsequent children. She could have used it for her grandchildren. She could have given it to a niece and aunt. It had value until the CPSC came out and in conjunction with Boppy. However, you want to read the record below as to whether or not it's a voluntary recall, a mandatory recall. The Boppy's webpage, I think sums it up where they say we worked with the CPSC in this recall. But even on the benefit of the bargain theory, why doesn't the $9 refund reflect market value that she was able to use it safely for five months? Therefore, rather than the market value being the $30 she paid, the true market value was only $21. So even if it's worth zero, even under your theory of benefit of the bargain, why doesn't the refund factor into that? Because the refund is inadequate in this situation, judge. And then, and we did not get a chance to develop that factual record below. I see my time has expired. Thank you. Good morning. May it please the court. My name is Sherry Clevins of Denton's on behalf of the Boppy company. As the district court correctly perceived, Ms. Hudson personally experienced no tragedy and no deception. This court should affirm dismissal of her lawsuit for three reasons. First, Ms. Hudson asserts economic injury because she alleges that she would not have purchased or paid as much for the newborn lounger. If it's safety risks had been disclosed, but the marketing statements that she relies on from Boppy's website were not a part of the bargain because she never saw them prior to her purchase. And the product warnings that were a part of the bargain prominently disclosed the risks on the packaging and the labels. Therefore, she has no economic harm. Second, Ms. Hudson is attempting to pivot to a design defect theory, but the law of this court forbids her from doing so for the first time on appeal. And her second amended complaint does not state a design defect claim. And finally, Ms. Hudson lacks standing to bring suit. With respect to the economic injury, Ms. Hudson claims that because she purchased the product without full knowledge of the risks, she has been economically injured. But cases cited by both parties in this case show that the context of the marketing is crucial to the overall issue of the false false or misleading elements in the marketing.  the total marketing and context of that marketing shows number one, that the four statements that were at issue and which were located on Boppy's website were not seen by Ms. Hudson prior to her purchase of the product. In fact, the Boppy pledge, which we heard from counsel about was not even put on that website until several years after the product had been purchased. So she could not have seen those marketing statements and they were not a part of what she believed to be the benefit of her bargain with the company. But two statements do fall within the correct temporal frame, right? They do. And those statements when taken in context and compared against the overall marketing, which would include the disclaimers and warnings on the package themselves show that there was no misleading statement. And the importance of the warnings cannot be understated. The warnings were located both on the outside package of the product, which she would have seen when she went into purchase the product at Walmart. She also had warnings that were located on the inside of the packaging, i.e. on the product itself. As long as that tag was never removed, those warnings were always visible to the consumer. Those warnings stated clearly and prominently that the product, if misused and used for sleep, carried with it a risk of positional asphyxia and suffocation and provided advice to the consumer about how to use it properly to avoid risk of death or  And so when you look at the totality of the circumstances, those two statements that say that Bobbie is committed to safety doesn't undermine, or if in fact conflict with the statements in the warnings and disclaimers located on the package itself. And that is very consistent with a number of the cases that we cited in our brief. So for example, the Avondia case from the third circuit involves a diabetes drug where the packaging for the product states on the package that it is safe and effective. It also on the backside or inside in the product slip contains information about the potential risks of using that product, including side effects. And the court in that case concludes that it's not actionable where the safety warnings contain detailed information about potential risks while at the same time, the packaging states that it is safe and effective. The difference between our case and the Avondia case are significant. And that is that our safe and effective statements were located on a website, not seen by this purchaser. So it's even a step removed from the facts in Avondia, which the court there found did not create a risk of false or misleading advertising. You can see a reproduction of the warning labels in our briefs at page 12 or 23. They're in the record. They show bright orange warning icons, package warnings, as I said, on the outside and on the package itself and instructions about how it could be used. Now, one of the things that we heard from opposing counsel is that he didn't have an opportunity. Ms. Hudson didn't have an opportunity to fully develop the record as to her injury, but the allegations in the complaint provide more than enough basis for this court to conclude that there would not be that Ms. Hudson would not be able to state a claim under Rule 12b-6. So counsel, I know you said you were going to get to standing as the third part of your presentation, but I'm trying to understand how to read the district court's order and maybe you could help me with that. Is it your view that the district court passed on standing in this case? No, it's my view that by passed on, do you mean skipped over it? I know. I'll be more precise. Do you think the district court ruled on standing in this case? I do. I think that, first of all, it was fully briefed by us in our briefs at the lower court. So it was part of the record. And the court does conclude in the opinion that under the benefit of the bargain theory, that plaintiff has not met its burden of establishing standing. So if we're to read the district court as having concluded that Ms. Hudson can get into court because she doesn't satisfy the injury element of the standing inquiry, what are we to make of the rest of the opinion or the rest of the order? I mean, there's no standing. Why, why reach the merits? I view it as an alternative conclusion. In other words, that there's no standing. And at the same time, the court also concludes that the case can be dismissed under Rule 12b-6. Okay. Could you address traceability? I can hear your arguments focused on the absence of injury. You briefed traceability to us. Could you maybe elaborate on whether there's a problem for Ms. Hudson here to show traceability for standing purposes? Yes, Your Honor. The allegation and the argument asserts that Ms. Hudson has standing because she purchased the product and used the product. That is not enough to establish traceability because she has to establish that she was injured by the marketing that creates this express or implied warranty that she relies on in her claims. So the very fact that she never saw any of the warnings is significant. Now in the lower court, we had an obligation set by the court to meet and confer at length prior to the filing of our motion to dismiss. And in those meet and confers, two of them which occurred both after the original complaint and after the first admitted complaint, we identified this issue and this pleading defect and noted that the fact that Ms. Hudson had not seen these marketing materials prior to the purchase essentially rendered her claim unsuccessful under Rule 12B-6 because she couldn't establish an injury. We also identified the 12B-1 issue. But you didn't move, you didn't separately move under 12B-1? We did not. We briefed it in our reply, but yes, we did not initially move. The amended pleadings that were then filed by Ms. Hudson failed to address those issues. So I read that as she was unable to assert that she had reviewed those, doesn't appear in any of her pleadings. She's now repled twice to the point of a second amended complaint. So the idea that we should go back down to further develop a record, we don't need a further developed record. The allegations in and of themselves established both a lack of standing and a lack of injury. Counselor, can I ask though, you were saying that the lack of pleading traceability defeats her claim, but to be more specific, you think that applies to all four claims because the first three claims deal with the warranties, but the fourth one's unjust enrichment. So why would that be, or is that, I guess, a separate analysis for traceability? I think it's the same analysis, Your Honor, because ultimately she asserts an economic injury arising from what she says is a product that is worth less than she believed that it was. And if you look ultimately at what the allegations are with respect to the value, she says that if she had understood the risks of this product, she would not have paid what she ultimately paid for it. And that the unjust enrichment is a sort of an alternative way of pleading the same point, which is that Bobbie got the benefit of her purchase, even though she would not have paid that value if she had understood the risks. And the problem with her argument is that she did understand the risks. The warnings included on the package fully disclosed that issue. And in the complaint, she goes on even further to describe both the recall and the infant injuries that occurred allegedly as a result of the product. And when you dig into what is attached to the complaint, including the articles that are linked in her complaint, I think it's footnote two, that article describes that the way in which those infants were injured were through use of the product that was inconsistent with the product warnings. And so she's not establishing, even in the allegations that a proper use of this product created a risk that she didn't understand. Ultimately, if there's a risk of this product, it is by consumers misusing it in a way that is inconsistent with the product labels and warnings. And that is all factored into her bargain based on the fact that she knew all of that information from the product warnings before she purchased it. So is there no plaintiff across this land who could make a viable claim on this so long as they received the warning on the benefit of the bargain? In other words, counsel says she just wouldn't have bought it. And that's the question. Who knows if she would have bought it? But you're saying even if she wouldn't have bought it, that doesn't matter because the warnings were there. If the facts asserted by a different plaintiff were the same, I would agree that that plaintiff would be equally unsuccessful. If in fact we had a plaintiff who had reviewed these warnings in advance, that might create standing and perhaps that plaintiff would be able to establish, or at least allege, I should say, an injury. I would contend if we were to go into the merits, that they would nonetheless fail on the claim at the ultimate stage because the warnings combined with the marketing doesn't create a falsity and doesn't create a warranty that is violated by the company. But if you're talking about whether or not such a plaintiff could survive a 12v6 motion, I think it's possible, but those are not the facts here. And this plaintiff cannot under the facts on this record. The one reference that I see to standing is kind of a casual drive-by almost, and nothing at the end of the opinion explaining what's happening, what's being ordered, even mentioned standing. This case seems awfully, the question that the district court was looking at to say, perhaps, was say no standing is awfully intertwined with the merits, it seems to me. Is there a case like that where an appellate court on this sort of a record with that kind of an intertwined merits has said no standing? I can't think of one, Your Honor. So I'm not sure that there is. Then why would we not send it back and say, Judge, we read your order and we see this one sentence, we're unsure what it means. We don't want to proceed if there's no standing. The rest of it's irrelevant. And so please advise. I would agree that there's no standing. I mean, I think that that's a threshold issue. I agree on that. At the same time, I think that this court was proper in determining that the case also fails under 12b6. Counsel, I just want to follow on Judge Phillips's question. Is it possible that remand wouldn't necessarily be useful here if we're only confined to the standing allegations in the complaint? Is it your position that we are looking to the four corners of the complaint to discern standing at this stage? That is correct. And is that the same posture that the district court would be in if we remanded? It is. And therefore, I think this court can conclude that there's no standing in the case rather than remanding it back for reconsideration of an issue that is plain based on the allegations set forth in the complaint. There are no further questions. I thank the court for its time. Counsel, I have one more just to help me on this. You mentioned before that the standing arguments were developed fully in your briefs and the record below. Can you just point my attention to what specific pleading that you think develops this argument? Yes, Your Honor. Just give me one second to find it. It's in the record in the appendix at 42 to 44 and 70 to 72. There was no response to those from Ms. Hudson. Just can you summarize what it says? It addresses the traceability issue and argues that because she did not see the marketing statements at issue, that she did not have standing to pursue the claim. Did you argue lack of injury in fact to the district court? I don't recall, but I believe that we did. Thank you. Thank you. May it please the court. I think that Your Honors have hit the nail on the head when you're looking at this issue and whether or not you're going to issue an opinion that's going to go forth with precedential value. The record is simply just deficient for us to decide a standing issue in this case. The motion that was made was a 12B6 motion. It wasn't a 12B1 motion. We don't have anything from the court other than, as Your Honor says, a drive-by mention of the 12B1 standing issue. Certainly when I was dealing with the amended complaints, when we are going through the documents and going through what the court has asked us to and hinted at what it's looking at, I viewed this as a warnings case. I viewed this as a safety issue. I did not view the standing as something that was relevant. Frankly, I do not even recall if I asked Ms. Hudson the question about, did you see these warnings before you purchased the product? Because it just didn't occur to me. I mean, certainly I could have asked her that if she said that, put it in the pleading. We would have made it past the 12B1 standard and we would have been at the 12B6, which we probably would be here based on what the court ruled below. I think we'd probably still be here. But I think the proper procedure here is to remand to the lower court to give us a clear indication of what it is the judge is ruling on, what it is that's really tossing the case on, and allowing me the opportunity to amend that complaint, to allege that language, if in fact Ms. Hudson did have some connection with the warnings or did see something in connection from Boppe, because frankly, we just didn't develop that in the lower record. So I think it would be, in the interest of judicial thoroughness, I think we should do that. Counsel, what is our standard of review here? DeNovo, Your Honor. So if it's a DeNovo review and we're just looking at the complaint, again, even if Judge Domenico were to do that and evaluate standing, it would come back up. Wouldn't we just do the same analysis ourselves? DeNovo on a 12B6 or 12B1. So, I mean, that's the real question, I think, is whether or not we get, which DeNovo, which one are you reviewing DeNovo, 12B6 or 12B1? And I think that's where we have the inquiry that needs to be placed with the lower court. And, you know, in my opinion, allowing an amended complaint at that lower court to tee up all the issues so that this court can then properly issue a procedural precedential ruling on the standing issue. Thank you, Your Honors. Thank you, Counsel. Thank you for your arguments. The case is submitted. Counsel are excused.